IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
JONESBORO DIVISION

KESHI CAROL ATKINSON                                                                          PLAINTIFF

v.                                          No. 3:05CV00140 JLH

THE PRUDENTIAL INSURANCE
COMPANY OF AMERICA                                                                           DEFENDANT

**OPINION AND ORDER**

This ERISA case is before the Court on cross-motions for judgment on the record filed by Plaintiff Keshi Carol Atkinson and Defendant Prudential Insurance Company of America. For the following reasons, the Court remands Atkinson's claim for long-term disability benefits to Prudential for determination of eligibility.

**I.**

Atkinson worked for American Greetings Corporation as a Material Handler from 1986 to 2000. She stopped working for about two months at the end of 1999 due to hearing loss, but returned to work in January 2000. Atkinson stopped working again in November 2000, however, due to hearing loss and lumbar strain. She then applied for disability benefits.

**A.    The Terms of the Plan.**

American Greetings provides disability benefits to employees under a long-term disability plan insured and administered by Prudential. The plan is an employee welfare benefit plan established pursuant to ERISA. The plan defines "disability" as follows:

You are disabled when Prudential determines that:

- you are unable to perform the *material and substantial duties* of your *regular occupation* due to your *sickness* or *injury*; and

- you have a 20% or more loss in your *indexed monthly earnings* due to that

>   *sickness* or *injury*.
>
>   After 24 months of payments, you are disabled when Prudential determines that due to the same sickness or injury, you are unable to perform the duties of any *gainful occupation* for which you are reasonably fitted by education, training or experience.

(emphasis in original). Thus, a plan participant is initially disabled under the terms of the plan if the participant can no longer perform his or her "regular occupation," which is the occupation the participant routinely performed at the onset of the disability. After 24 months, the definition of disability changes so that a participant is deemed disabled, and thus eligible for continuing benefits, only if he or she cannot perform "any gainful occupation."

**B.    Atkinson's Claim.**

When Atkinson stopped working in November 2000, she provided Prudential with statements from her treating physician, Dr. J. Brewer Rhodes, that she was totally disabled from her job due to hearing loss and lumbar strain. About a month later, Atkinson informed Prudential that the lumbar strain had "resolved itself," but that she was still unable to work because of her hearing loss. Atkinson then provided Prudential with her medical records from Dr. John Jiu, an ear specialist. Based on this documentation, Prudential determined that Atkinson was no longer able to perform her regular occupation because she worked in a noisy factory environment around a lot of machines and could not hear instructions and safety warnings. Prudential thus approved Atkinson's claim for benefits for the initial 24-month period.

During this initial period, Prudential referred Atkinson to Kay Bradley, a vocational consultant, for vocational rehabilitation services. According to Ms. Bradley's report, Atkinson stated that she was not physically impaired by her hearing loss and hoped to go to work for a cleaning service. Atkinson reasoned that she could perform this type of work with her limited hearing.

2

Ms. Bradley then worked with Atkinson on resume preparation and job seeking skills. About four months later, however, Atkinson informed Ms. Bradley that she had been diagnosed by a rheumatologist with fibromyalgia and three bulging lumbar discs which caused her right leg to swell and go numb. Because working for a cleaning service then appeared to be an inappropriate job goal, Ms. Bradley sent Atkinson a Career Interest Inventory to better assess Atkinson's job interests. Based on the interest inventory, Ms. Bradley identified several potential jobs, including Word Processing Machine Operator, Typist, File Clerk, General Clerk, Computer Operator, and Tax Preparer. Atkinson stated that she was unable to work at that point because of pain in her back and legs, and Ms. Bradley closed Atkinson's file.

A few months later, in March 2002, Atkinson informed Prudential that she was disabled because of her hearing loss and her fibromyalgia. She stated that her back condition was not as disabling because she treated it with medication and that Dr. Judy Ash, her rheumatologist, had told her surgery would not be needed anytime soon.

In December 2002, Prudential informed Atkinson that her initial 24 months of disability benefits would end in May 2003. Accordingly, Prudential would conduct an evaluation of her eligibility for benefits beyond May 2003 according to the terms of the plan, which provided for continued benefits only if she was unable to perform any job for which she was reasonably fitted by education, training, or experience.

At that time, Dr. Rhodes reported to Prudential that Atkinson's disabling diagnoses included fibromyalgia, hearing loss, chronic obstructive pulmonary disease ("COPD"), and lumbar degenerative disc disease. Dr. Rhodes stated that Atkinson could perform sedentary work, but that she was restricted from bending, stooping, climbing stairs, and pushing or pulling loads.

Prudential's staff reviewed this report along with Atkinson's other available medical documentation. Prudential also reviewed the decision of the Social Security Administration granting Atkinson Social Security disability benefits. Based on this information, Prudential conducted a transferrable skills analysis ("TSA") and identified several sedentary jobs that Atkinson could ostensibly perform, including Word Processing Machine Operator, Typist, and Tax Preparer. Prudential thus concluded that Atkinson was not disabled from "any gainful occupation" and informed her that benefits would not be provided beyond the 24-month period for which she had been approved.

Atkinson appealed this decision and submitted additional documentation. First, she submitted a Vocational Rehabilitation Report by David Elmore, a certified rehabilitation counselor. This report revealed that Atkinson completed the 10th grade in high school in 1974 and then earned a GED in 1986. Based on his interview with Atkinson and his review of her medical documentation, Mr. Elmore opined that Atkinson was "non-employable" because of her limited educational achievement and her physical disabilities.

Next, Atkinson submitted further medical documentation relating to numerous medical issues for which Atkinson had sought treatment between 1999 and 2004, including episodes of numbness in her face and arm, COPD, chest pains, hypertension, bursitis in her shoulders and hips, and swelling in her leg. The diagnostic tests related to her episodes of numbness and chest pains showed normal results, and the tests for lung function showed only minimal impairment. Atkinson's physicians noted that her strength and range of motion in her extremities were normal. Two of Atkinson's physicians also noted that Atkinson was "very active" and that she experienced chest pains "while riding her bike."

Even so, Dr. Rhodes wrote a letter to Prudential, stating that Atkinson was still unable to maintain employment due to hearing loss, fibromyalgia, bulging lumbar discs, and venous insufficiency in her right leg that caused "painful swelling with prolonged sitting or standing." Dr. Rhodes also stated that Atkinson was unable to lift more than 10-15 pounds and had limited flexibility. Dr. Marlan Rhame, another physician who examined Atkinson during the summer of 2004, stated in his assessment that Atkinson had bursitis in her shoulders and hips, muscle spasms, swelling in her ankle, epigastric abdominal pain, COPD, and obesity. Dr. Rhame also noted that Atkinson's medical history included depression and that her medications included Lexapro, which is an antidepressant. PHYSICIANS' DESK REFERENCE 1193 (60th ed. 2006).

Finally, Atkinson submitted to Prudential a report from an MRI (magnetic resonance imaging) scan of her spine that had been done in November 2001. The physician who interpreted the MRI concluded that Atkinson had a "small diffuse disc bulge L2-3," and a "small left sided disc bulge L4-5 with L4-5 neural foraminal narrowing." Atkinson's attorney informed Prudential that Atkinson had not received any additional treatment for her back or undergone any further testing, but that Atkinson continued to take medications for pain and her doctor had advised her that surgery would likely be necessary in the future.

Prudential's staff reviewed all of this documentation and referred Atkinson's file for review by Thomas Virgilio, Prudential's vocational rehabilitation specialist. Mr. Virgilio stated that the occupational alternatives previously identified, such as Typist, Word Processing Machine Operator, and Tax Preparer, were not appropriate based upon Atkinson's education and work history. Atkinson did not have the requisite transferrable skills, and retraining would be necessary for her to become employed in any of those occupations. Mr. Virgilio stated, however, that Atkinson's

medical documentation "does not support that [she] would have difficulty with prolonged walking/standing, frequent lifting of at least 20 pounds, repetitive movements, prolonged sitting, [and] prolonged use of telephone (if necessary adaptive hearing devices can also be utilized)." Based on his assessment of her physical capabilities, work history, and education, Virgilio concluded that Atkinson was capable of performing a number of occupations, including Small Products Assembler, Plastic Hospital Products Assembler, Optical Bench Worker, Hotel Housekeeping Attendant, and Photocopying Machine Operator. Virgilio stated that these jobs involved "work performed at the light exertion" level and "work performed in moderate noise environment."[1]

After considering all of this information, Prudential decided to uphold its previous decision to terminate Atkinson's benefits. When informed of Prudential's decision, Atkinson brought a second appeal and submitted a Psychological Evaluation for Prudential to consider in reevaluating her claim.

Atkinson's psychologist, Dr. George DeRoeck, diagnosed Atkinson with major depression, adjustment disorder with mixed emotional features, and borderline intellectual functioning. Dr. DeRoeck conducted an intelligence test and an achievement test as part of the evaluation. From these, he determined that Atkinson has an IQ of 72, a 5th grade reading and spelling level, and a 4th grade math level. Dr. DeRoeck concluded that Atkinson "would have significant difficulty remembering work-like procedures," "deficits in sustained concentration and attention," and "significant difficulty functioning at a significant pace." Dr. DeRoeck did not state whether

---

[1] This statement is consistent will the job descriptions provided by Virgilio as to all of the identified occupations except Hotel Housekeeping Attendant. The description of this occupation includes moving and arranging furniture and turning mattresses, and the strength level required for this occupation is noted as "H," as opposed to "L" for the other occupations.

Atkinson could work, but stated that she would have "limited 'endurance' for a majority of work-related activities," that "she would be prone to overreacting to positive criticism by supervisors," and that "her capacity for managing viable stress within the work setting would be significantly compromised."

When Prudential began its second reconsideration of Atkinson's claim, it referred the case to a physician, Dr. Donald Abbott, asking him to review Atkinson's file and determine whether any of her conditions, either alone or in combination, rendered her incapable of working. Dr. Abbott reviewed Atkinson's medical records and concluded that Atkinson was capable of "at least sedentary work," but that "[s]he would need to be able to elevate her leg probably 2-3 times/day and get up and move around." The record is unclear, however, whether Dr. Abbott reviewed Atkinson's Psychological Evaluation, and he did not address her depression, adjustment disorder, or intellectual functioning in his report.

Based on Dr. Abbott's conclusion that Atkinson could perform sedentary work and Prudential's previous identification of sedentary occupations that Atkinson could ostensibly perform, Prudential again upheld its decision to terminate Atkinson's benefits. When informed that Prudential had denied her second appeal, Atkinson filed suit.

## II.

Section 502(a)(1)(B) of ERISA provides that "a participant or beneficiary" may bring a civil action "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). "ERISA provides a plan beneficiary with the right to judicial review of a benefits determination." *Woo v. Deluxe Corp.*, 144 F.3d 1157, 1160 (8th Cir. 1998) (citing 29 U.S.C. §

1132(a)(1)(B)). Although ERISA contains no standard of review, the Supreme Court has held that a reviewing court should apply a *de novo* standard of review unless the "plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115, 109 S. Ct. 948, 956-57, 103 L. Ed. 2d 80 (1989). Where a plan gives the administrator such discretion, the administrator's decision is reviewed for an abuse of discretion. *Woo*, 144 F.3d at 1160 (citing *Firestone*, 489 U.S. at 115).

Under the abuse-of-discretion standard, the proper inquiry is whether Prudential's decision was reasonable, that is, whether it was supported by substantial evidence. *Ortlieb v. United HealthCare Choice Plans*, 387 F.3d 778, 781 (8th Cir. 2004). "Substantial evidence is 'more than a scintilla but less than a preponderance.'" *Smith v. Unum Life Ins. Co. of Am.*, 305 F.3d 789, 794 (8th Cir. 2002) (quoting *Schatz v. Mut. of Omaha Ins. Co.*, 220 F.3d 944, 949 (8th Cir. 2000)). "'It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Fletcher-Merrit v. NorAm Energy Corp.*, 250 F.3d 1174, 1179 (8th Cir. 2001) (quoting *Consol. Edison Co. of N.Y. v. NLRB*, 305 U.S. 197, 229, 59 S. Ct. 206, 83 L. Ed. 126 (1938)). An administrator's decision is reasonable if a reasonable person could have reached a similar decision, given the evidence in the record, not whether the reasonable person would have reached that decision. *Ferrari v. Teachers Ins. & Annuity Ass'n*, 278 F.3d 801, 807 (8th Cir. 2002). Under this standard, the Court should consider only evidence that was before Prudential when the claim was denied. *Farfalla v. Mut. of Omaha Ins. Co.*, 324 F.3d 971, 974-75 (8th Cir. 2003).

To obtain a less deferential review, a plaintiff must demonstrate "that (1) a palpable conflict of interest or a serious procedural irregularity existed, which (2) caused a serious breach of the plan

administrator's fiduciary duty to her." *Woo*, 144 F.3d at 1160. To satisfy the second part of this requirement, the plaintiff must "show that the conflict or procedural irregularity has 'some connection to the substantive decision reached.'" *Id.* at 1161 (quoting *Buttram v. Cent. States, S.E. & S.W. Areas Health & Welfare Fund*, 76 F.3d 896, 901 (8th Cir. 1996)). The Eighth Circuit has held "that this requirement 'presents a considerable hurdle' for plaintiffs." *Torres v. Unum Life Ins. Co. of Am.*, 405 F.3d 670, 679 (8th Cir. 2005) (quoting *Barnhart v. Unum Life Ins. Co. of Am.*, 179 F.3d 583, 588 n.9 (8th Cir. 1999)).

### III.

In this case, the parties dispute whether the language of the plan gives Prudential discretionary authority to determine eligibility for benefits or to construe the terms of the plan. Even assuming the language of the plan gives Prudential such discretion, Atkinson contends that Prudential's decision should not be reviewed under the deferential abuse-of-discretion standard because Prudential, as both administrator and insurer of the plan, had a financial conflict of interest and caused procedural irregularities while handling her claim. Atkinson further argues that, even if the abuse-of-discretion standard applies, Prudential's decision should be reversed because a reasonable person could not have reached the same decision based on the evidence presented.

This Court, however, will not decide any of these questions at this time. As discussed below, Prudential's evaluation of Atkinson's case suffers from deficiencies that render this case appropriate for remand to Prudential for reevaluation. A claimant is entitled to benefits under the Prudential plan if, after the first 24 months of payments, the claimant is "unable to perform the duties of any gainful occupation" for which the claimant is "reasonably fitted by education, training or experience." This definition involves at least two inquiries. The first inquiry involves a claimant's actual ability to

perform the duties of an occupation. If the claimant has the physical and mental capacities to perform an occupation, the second inquiry is whether the occupation is one for which the claimant is fit by virtue of education, training, or experience. Prudential's evaluation of Atkinson's claim failed on both points. First, in determining whether Atkinson is capable of working, Prudential failed to perform the "full and fair" review of Atkinson's evidence that is required under ERISA. Prudential failed to consider Atkinson's Psychological Evaluation, gave only cursory consideration to much of her other medical documentation, and made no credibility assessment as to her subjective complaints of pain. Second, even if Atkinson is capable of working, Prudential failed to determine whether any of the jobs that she may be able to perform are jobs "for which she is reasonably fitted by education, training or experience."

### A.   Prudential Failed to Perform a "Full and Fair" Review of the Evidence Presented by Atkinson to Determine Whether She is Capable of Working.

Under ERISA, an employee benefit plan must "afford a reasonable opportunity to any participant whose claim for benefits has been denied for a full and fair review by the appropriate named fiduciary of the decision denying the claim." 29 U.S.C. § 1133(2). This "full and fair review" must "take[] into account all comments, documents, records, and other information submitted by the claimant relating to the claim, without regard to whether such information was submitted or considered in the initial benefit determination." 29 C.F.R. § 2560.503-1(h)(2)(iv). Thus, in reviewing a claim for disability benefits, a plan administrator must consider all relevant evidence submitted by a claimant and is not free to ignore evidence of a potentially disabling condition. *Abram v. Cargill, Inc.*, 395 F.3d 882, 887-88 (8th Cir. 2005). In addition, the plan administrator must "consult with a health care professional who has appropriate training and experience in the field of medicine involved . . . ." 29 C.F.R. § 2560.503-1(h)(3)(iii). *See also*

*Morgan v. Unum Life Ins. Co. of Am.*, 346 F.3d 1173, 1177-78 (8th Cir. 2003) (plan administrator's denial of disability benefits was arbitrary and capricious where administrator relied upon opinion of in-house physician who had no expertise in claimant's disorder).

### *(1) Prudential failed to consider Atkinson's Psychological Evaluation.*

As noted above, Atkinson submitted to Prudential a Psychological Evaluation diagnosing her with major depression, an adjustment disorder, and borderline intellectual functioning. Dr. DeRoeck, the psychologist, gave specific information as to how he believed these disorders would affect Atkinson's ability to work. Atkinson's medical records also showed that she was taking an antidepressant medication. Yet in denying her second appeal, Prudential relied upon Dr. Abbott's assessment, which did not include any consideration of Atkinson's psychological conditions. Dr. Abbott did not even mention the Psychological Evaluation or the antidepressant treatment, much less offer any explanation as to whether this information affected his assessment of Atkinson's ability to work. Furthermore, the record contains no evidence that Dr. Abbott has any expertise in psychology or that Prudential consulted anyone who does. On remand Prudential should evaluate whether Atkinson's psychological conditions, alone or in combination with her physical impairments, render her unable to work in any gainful occupation. *See Abram*, 395 F.3d at 887-88 (remand is an appropriate remedy where a plan administrator fails to consider evidence of a disabling condition or to explain the rational for its decision).

### *(2) Prudential conducted only a cursory review of the documentation of several of Atkinson's other medical conditions.*

As noted above, Prudential relied upon Dr. Abbott's assessment of Atkinson's medical condition in denying her second appeal. Dr. Abbott's assessment, however, shows only that he rejected most of the documentation from Atkinson's treating physicians with little explanation, no

consultation with appropriate specialists, and without having examined Atkinson himself.

First, with regard to Atkinson's venous insufficiency, Dr. Abbott stated that this condition "can be effectively treated with compression stockings or even surgery." The record contains no evidence that Dr. Abbott consulted any of Atkinson's physicians to determine either the appropriateness of these treatments or their likelihood of success in Atkinson's case, and he does not explain how a physician can determine that such treatments are appropriate for a particular patient with venous insufficiency without having examined the patient. Moreover, he seems to base his opinion as to Atkinson's ability to perform sedentary work on the assumption that her venous insufficiency will be effectively treated in the future rather than on her present medical condition. Such speculation cannot form the basis of a denial of ERISA benefits. *See Torres*, 405 F.3d at 680-81 (ERISA administrator's decision must be based on "substantial evidence," and speculation that plaintiff's job performance was impaired by alcohol use was improper).

Second, Dr. Abbott dismissed Dr. Ash's diagnosis of fibromyalgia, stating that the medical records contained little information as to history and physical exams and that "it is unclear how [Dr. Ash] makes this diagnosis or how impairing it is." Dr. Abbott did not mention Atkinson's reports of pain associated with this condition, but asserted that "[m]any people with fibro are . . . able to function normally." The fact that "many people" who have fibromyalgia may function normally does not establish that Atkinson can do so. *See Hawkins v. First Union Corp. Long-Term Disability Plan*, 326 F.3d 914, 919 (7th Cir. 2003) ("The fact that the majority of individuals suffering from fibromyalgia can work is the weakest possible evidence that [the plaintiff] can, especially since the size of the majority is not indicated . . . ."). Moreover, the record contains no evidence that Dr. Abbott has any expertise in fibromyalgia or rheumatology, or that he or anyone else at Prudential

consulted a specialist for more information. Such failure to consult with an appropriate medical specialist falls short of ERISA's requirements for a full and fair review. *See* 29 C.F.R. § 2560.503-1(h)(3)(iii) (ERISA plan administrator must "consult with a health care professional who has appropriate training and experience in the field of medicine involved").

Third, Dr. Abbott's entire evaluation of Atkinson's bulging lumbar discs consisted of one sentence: "The 3 bulging discs, as mentioned are not a cause of impairment as at least half of the population have these." As with fibromyalgia, the fact that the majority of people with bulging discs function in a particular way is not determinative of Atkinson's functioning. *See Hawkins*, 326 F.3d at 919.

In sum, Dr. Abbott's report does not reflect a thorough assessment of Atkinson's level of impairment, and Prudential is not free to rely upon a physician's unsupported opinion in determining eligibility for benefits. *See Abram*, 395 F.3d at 887 (ERISA plan administrator cannot rely on physician's report without considering whether his conclusions are supported by underlying medical evidence); *Torres*, 405 F.3d at 680 (reasonableness of plan administrator's decision can be assessed by both quantity and quality of supporting evidence). On remand, Prudential should conduct a thorough assessment of the evidence of all of Atkinson's physical impairments, consulting with appropriate specialists in the relevant fields of medicine as needed.

### (3) *Prudential made no findings as to Atkinson's credibility in her reports of disabling pain.*

Atkinson's disability claim stems substantially from her complaints of pain associated with her fibromyalgia, bursitis, venous insufficiency, and bulging lumbar discs. A plan administrator may not refuse to consider a claimant's subjective complaints of disabling pain and "may not deny benefits simply because the only evidence of a disabling condition is subjective evidence." *Collins*

*v. Cont'l Cas. Co.*, 87 Fed. App'x 605, 607 (8th Cir. 2004). While symptoms such as pain may be difficult to assess, "disability plan administrators may not require objective medical evidence of the cause if there is consistent evidence of disability symptoms, and no finding that the claimant is not credible in her complaints." *Abram*, 395 F.3d at 887 n.3. Failure to assess the claimant's credibility in this situation is an abuse of discretion. *Collins*, 87 Fed. App'x at 607-08.

Fibromyalgia, in particular, is a disease that is known to cause pain but is difficult to assess. Fibromyalgia is defined as "pain and stiffness in the muscles and joints that is either diffuse or has multiple trigger points." *Dorland's Illustrated Medical Dictionary* 697 (30th ed. 2003). It is "'a common, but elusive and mysterious, disease, much like chronic fatigue syndrome . . . . Its cause or causes are unknown, there is no cure, and, of greatest importance to disability law, its symptoms are entirely subjective. There are no laboratory tests for the presence or severity of fibromyalgia.'" *Hawkins* 326 F.3d at 916 (quoting *Sarchet v. Chater*, 78 F.3d 305, 306-07 (7th Cir. 1996)). Given the nature of fibromyalgia, it would not be reasonable for Prudential to rely solely upon objective evidence in assessing Atkinson's level of impairment caused by this disease. *See Cook v. Liberty Life Assurance Co. of Boston*, 320 F.3d 11, 21 (1st Cir. 2003) (given the nature of chronic fatigue syndrome, a disease for which there is "no 'dipstick' laboratory test," it was not reasonable to expect the claimant to provide objective clinical evidence of the disorder).

The administrative law judge who determined that Atkinson is eligible for Social Security disability benefits specifically found that Atkinson's "assertions concerning her ability to work are credible." "Although the Social Security Administration's determination is not binding, it is admissible evidence to support an ERISA claim for long-term disability benefits." *Riedl v. Gen. Am. Life Ins. Co.*, 248 F.3d 753, 759 n.4 (8th Cir. 2001). Atkinson's treating physicians apparently also

found her credible. None suggested that she was malingering or exaggerating her symptoms, and each physician that she consulted prescribed various medications, tests, and therapies to diagnose and treat her conditions. While Prudential is not required to accord special deference to the opinions of Atkinson's physicians, it "may not 'arbitrarily refuse to credit a claimant's reliable evidence, including the opinions of a treating physician[,]'" while "relying solely on one independent reviewing physician's opinion." *Burch v. Hartford Life & Accident Ins. Co.*, 383 F. Supp. 2d 1119, 1125-26 (W.D. Ark. 2005) (quoting *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 123 S. Ct. 1965, 1967, 155 L. Ed. 2d 1034 (2003)). On remand, Prudential should consider all relevant evidence in determining whether Atkinson is disabled by chronic pain, either alone or in combination with her hearing loss, psychological impairments, and other conditions.

**B.     Prudential Failed to Determine Whether Atkinson Can Perform Any Gainful Occupation for Which She is Reasonably Fitted by Education, Training or Experience.**

Even assuming that Atkinson has the capacity to perform "at least sedentary work," as Prudential contends, Prudential has failed to determine whether Atkinson is fit for such occupations by her education and experience. Prudential first denied Atkinson's claim based on a TSA from which it concluded that she could perform the sedentary occupations of Word Processing Machine Operator, Typist, and Tax Preparer. Prudential's vocational expert, Thomas Virgilio, later determined that this assessment was incorrect, as Atkinson is not reasonably fitted for these occupations by her education, training, or experience. Mr. Virgilio concluded, however, that Atkinson was not limited in her ability to walk, stand, or sit for prolonged periods of time and that she therefore could perform jobs involving "light exertion," as opposed to merely sedentary occupations. Mr. Virgilio performed a second TSA on this basis, concluding that Atkinson could perform occupations such as Small Products Assembler, Plastic Hospital Products Assembler,

15

Optical Bench Worker, Hotel Housekeeping Attendant, and Photocopying Machine Operator. Prudential expressly based its denial of Atkinson's first appeal on these conclusions.

When Prudential reevaluated Atkinson's case upon her second appeal, its physician, Dr. Abbott, reached a determination as to Atkinson's physical capacities that was contradictory to Mr. Virgilio's. Dr. Abbott stated that Atkinson was capable of sedentary work and that she would have to be able to change positions and elevate her leg two to three times each day. These restrictions indicate that Atkinson would not be able to sit, stand, or walk for prolonged periods of time.

Prudential did not perform another TSA, however, to determine whether Atkinson is reasonably fitted for any sedentary occupations by her education, training, or experience. Instead, in denying Atkinson's second appeal, Prudential stated:

> [W]e have determined that documentation is not supportive of an impairment of such a degree that would preclude Ms. Atkinson from having at least sedentary work capacity from May 2003 to the present. We also previously identified alternate, sedentary occupations that Ms. Atkinson would be capable of performing based on her education, training and past work experience. Therefore, we are upholding our determination to terminate Ms. Atkinson's claim . . . .

In other words, Prudential relied on Dr. Abbott's conclusion that Atkinson was physically capable of sedentary work, combined with Prudential's initial identification of sedentary occupations that Atkinson could ostensibly perform – the same sedentary jobs that Prudential's own vocational expert later eliminated because Atkinson lacks the requisite education and training.

When an ERISA plan defines eligibility for benefits with language requiring that the claimant be unable to perform any occupations for which he or she is suited by virtue of education or training, the plan administrator must conduct an appropriate vocational evaluation in determining the claimant's eligibility under this standard. *Gunderson v. W.R. Grace and Co. Long Term Disability Income Plan*, 874 F.2d 496 (8th Cir. 1989), involved an ERISA plan with language virtually

identical to the plan in this case. Under the plan in *Gunderson*, a claimant was deemed totally disabled after the first 24 months of payments if he was completely unable to perform "any occupation or employment for wage or profit for which [he] is or becomes reasonably qualified by training, education or experience." *Id.* at 498. The plan administrator terminated the claimant's benefits based on its conclusion that the claimant had "sufficient skills to perform clerical/administrative or sedentary work, even without retraining." *Id.* at 499. Holding that the plan administrator acted arbitrarily and capriciously in reaching this decision, the Eighth Circuit pointed to evidence that the claimant could not perform such work without retraining and stated that the Plan should have obtained a vocational expert's opinion before terminating benefits. *Id. See also Quinn v. Blue Cross & Blue Shield Ass'n*, 161 F.3d 472, 476 (7th Cir. 1998) (holding that, while the plan administrator was under no obligation to perform a full-blown vocational evaluation, it was under a duty to determine the types of skills possessed by the claimant and whether those skills would enable her to engage in another occupation).

      Here, Prudential based its final decision upon inconsistent pieces of information from two different vocational evaluations. Even assuming that Atkinson has the mental and physical capacity to perform sedentary work, as Prudential contends, it cannot base its decision that she is ineligible for benefits on its erroneous identification of sedentary jobs that she is not qualified to perform. *See Creech v. Unum Life Ins. Co. of N. Am.*, 162 Fed. App'x 445, 447-48 (6th Cir. 2006) (transferrable skills analysis based upon erroneous assumptions was not legitimate basis for determining jobs for which claimant was qualified). Thus, on remand, Prudential must conduct an appropriate vocational evaluation to determine whether any sedentary occupations exist for which Atkinson is reasonably fitted by her education, training, or experience.

**CONCLUSION**

For the reasons stated above, Atkinson's claim is remanded to Prudential for reevaluation. First, Prudential must consider all of the evidence relevant to Atkinson's physical and psychological conditions and determine whether she is capable of performing "any gainful occupation." If Atkinson is capable of working, Prudential must then determine whether there are any occupations that she is capable of performing that she is also reasonably fitted for by her education, experience, or training.

IT IS SO ORDERED this 14th day of June, 2006.

J. LEON HOLMES
UNITED STATES DISTRICT JUDGE